FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 13, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

TRISHA G.,

                   Plaintiff,

   v.

COMMISSIONER OF SOCIAL
SECURITY,

                  Defendant.

NO:  4:17-CV-5160-FVS

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross motions for summary

judgment.  ECF Nos. 14 and 16.  This matter was submitted for consideration

without oral argument.  The plaintiff is represented by Attorney Thomas Andrew

Bothwell.  The defendant is represented by Special Assistant United States

Attorney Leisa A. Wolf.  The Court has reviewed the administrative record, the

parties' completed briefing, and is fully informed.  For the reasons discussed

below, the court **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 14,

and **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 16.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~1

**JURISDICTION**

Plaintiff Trisha G.[1] protectively filed for disability insurance benefits and supplemental security income on August 22, 2013, alleging an onset date of March 18, 2013. Tr. 239-47. Benefits were denied initially, Tr. 145-48, and upon reconsideration, Tr. 151-54. Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on April 19, 2016. Tr. 46-81. Plaintiff was represented by counsel and testified at the hearing. *Id*. The ALJ denied benefits, Tr. 19-41, and the Appeals Council denied review. Tr. 1. The matter is now before this court pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 38 years old at the time of the hearing. *See* Tr. 239. She got her GED in 2001, and testified that she was enrolled in a medical assistant program but did not complete the program. Tr. 55, 262. She resides with her three children, aged 15, 11, and 9. Tr. 51. Plaintiff has work history as a cashier, sales

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

representative, receptionist, sales attendant, child monitor, and check cashier. Tr. 68-70, 77. She testified that she was fired from several jobs because of too many absences, and her most recent job ended because the store closed down. Tr. 68-71. Plaintiff testified that she could not work because of her anxiety, and inability to get out of bed "most of the time" because she "always[s] feels really sad." Tr. 57.

Plaintiff reported that she is only able to leave the house once a week because of her anxiety, it is very difficult to get out of bed because of sadness "most of the time," it is difficult to interact with people, and she gets nervous and paranoid every time she has to leave the house. Tr. 52, 57-58, 67. She also testified that she has manic moods that last from three days to a week, approximately three times each year. Tr. 72-73. Plaintiff testified that her symptoms started after the birth of her first child 20 years ago, and continue to worsen. Tr. 57-58.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~4

impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 18, 2013, the alleged onset date. Tr. 24. At step two, the ALJ found Plaintiff has the following severe impairments: arthralgias, left knee derangement, diabetes mellitus, affective disorder, and anxiety disorder. Tr. 25.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 25. The ALJ then found that Plaintiff had the RFC

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with some exceptions. The claimant can lift and/or carry fifty pounds occasionally and twenty-five pounds frequently, and stand and/or walk, and sit, for about six hours in an eight-hour day. She can frequently kneel, crouch, and crawl, and must avoid concentrated exposure to vibrations and extreme cold. The claimant has sufficient concentration to understand, remember, and carry out simple, repetitive tasks, and can maintain concentration, persistence, and pace in two-hour increments for simple, repetitive tasks throughout an eight-hour workday. The claimant can work superficially and occasionally with the general public. Superficial means she can refer the public to others to resolve their demands or requests, but she is not having to resolve those demands or requests. The claimant can work in same room with an unlimited number of coworkers, but not in coordination of work activity. She can adapt to simple workplace changes and make simple workplace judgments as may be required for simple, repetitive task work, and can interact occasionally with supervisors.

Tr. 27-28. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 34. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: cleaner, industrial and kitchen helper. Tr. 34-35. On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from March 18, 2013, through the date of the decision. Tr. 35.

/ / /

/ / /

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 14. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's symptom claims

2. Whether the ALJ properly weighed the medical opinion evidence; and

3. Whether the ALJ erred at step five.

**DISCUSSION**

**A. Plaintiff's Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. Tr. 28.

### 1. Ability to Work

First, the ALJ found "[t]he records indicate [Plaintiff] has been able to work in spite a long history of mental health difficulties." Tr. 29. In support of this finding, the ALJ noted that Plaintiff's "work history reports and her earnings

records demonstrate [Plaintiff] worked fairly consistently following high school. For example, [Plaintiff] reported working full time for a payday loan company earning above the substantial gainful activity threshold level between 2008 and 2010, which is consistent with her earnings records." Tr. 29 (citing Tr. 254, 328, 333-34). Generally, the ability to work can be considered in assessing credibility. *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1227 (9th Cir. 2009); *see also* 20 C.F.R. § 404.1571 (employment "during any period" of claimed disability may be probative of a claimant's ability to work at the substantial gainful activity level).

However, the work history cited by the ALJ in support of this finding was between 2008 and 2010, three years before Plaintiff's alleged onset date of disability of March 18, 2013. *See* Tr. 239, 242. Moreover, "[i]t does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed,* that he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007). In fact, evidence that a claimant tried to work, and was unsuccessful, may support the claimant's allegations of disabling pain. *Id.* While not considered by the ALJ, Plaintiff testified that she was fired from the jobs cited by the ALJ because of too many absences; and she was missing three days per month at her most recent payday loan job in 2013, before the store closed down. Tr. 68-71. Based on the foregoing, Plaintiff's attempts to work prior to the relevant adjudicatory period, is not a

specific, clear and convincing reason to discount Plaintiff's symptom claims.

However, this error is harmless because, as discussed below, the ALJ's ultimate

credibility finding was supported by substantial evidence. *See Carmickle v.*

*Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

## 2. Daily Activities

Second, the ALJ noted that Plaintiff's "activities throughout the relevant

period are inconsistent with her allegations of severely limiting symptoms." Tr.

29. Plaintiff correctly notes that a claimant need not be utterly incapacitated in

order to be eligible for benefits. ECF No. 14 at 14 (citing *Fair v. Bowen*, 885 F.2d

597, 603 (9th Cir. 1989)); *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir.

2007) ("the mere fact that a plaintiff has carried on certain activities . . . does not in

any way detract from her credibility as to her overall disability."). Regardless,

even where daily activities "suggest some difficulty functioning, they may be

grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict

claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Here, Plaintiff testified that she is unable to leave her home for four or five

days a week due to severe anxiety, and was unable to maintain regular attendance

at a job because she had difficulty getting out of bed. Tr. 28, 57-58, 67-69.

Plaintiff additionally alleges difficulty with lifting, squatting, bending, standing,

reaching, walking, sitting, kneeling, climbing stairs, seeing, completing tasks,

understanding, following instructions, using her hands, getting along with others,

paying attention, handling stress and changes in routine, and with her memory and concentration. Tr. 28 (citing Tr. 325-26). However, as noted by the ALJ, Plaintiff testified that she is entirely responsible for caring for three of her children, prepares meals, drives, goes grocery shopping, and goes to the laundromat. Tr. 29, 51-55. Plaintiff also reported that she vacuums on a daily basis, and prepares meals taking an hour or more on a daily basis. Tr. 29, 322.

The ALJ found that "[c]aring for children on a regular basis suggests [Plaintiff] retains the ability to handle at least routine stressors and responsibilities, and make simple judgments and decisions." Tr. 29. Plaintiff argues the ALJ "failed to account for the limited involvement she has with her children"; including: not helping them with homework, not getting them ready for school, and getting help from her 20 year old daughter. ECF No. 14 at 14 (citing Tr. 51-53). However, Plaintiff's ability to care for children without help during any period may undermine claims of totally disabling symptoms. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). As indicated above, Plaintiff reported that she cleaned, prepared meals, does grocery shopping, does laundry, and is ultimately responsible for caring for her three children. Tr. 51-55. Moreover, the ALJ specifically noted that while Plaintiff testified that "her oldest daughter helps her care for her other children, [Plaintiff] previously indicated that she was not getting any such help." Tr. 30 (citing Tr. 321).

In addition, the ALJ noted that Plaintiff testified she works on memory books and scrap books several times per week, and "spends a couple hours working on these projects at a time. [Plaintiff] specifically described working on a turtle made out of planting pots for five hours, including gluing and painting, and said that once she starts a project like this she has to finish it." Tr. 30, 63. And "[c]ontrary to her allegations of almost never leaving her home, [Plaintiff] advised treating providers that she was engaged in a variety of outside activities, including playing football with her son and taking her children to the river 'each day' so they could play." Tr. 30 (citing Tr. 497, 555). Finally, the ALJ noted that Plaintiff complied with the dependency court requirements related to her children, including, attending and participating in drug and alcohol classes twice a week and participating in therapy. Tr. 30, 53-54, 65-66. Plaintiff argues that the "outdoor" activities cited by the ALJ, and the drug and alcohol classes she attended, were "sporadic and not performed eight hours a day." ECF No. 14 at 14. However, regardless of the rate at which these particular activities were performed, it was reasonable for the ALJ to conclude that Plaintiff's overall "level of activity . . . is inconsistent with [Plaintiff's] allegations, including the statements that she never leaves her home and spends almost all of her time in bed." Tr. 30; *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)

("[t]he ALJ is responsible for determining credibility").  This was a clear and convincing reason to discredit Plaintiff's symptom claims.

### 3.  Lack of Objective Medical Evidence

Third, the ALJ found the "minimal and mild physical examinations findings found throughout the record are inconsistent with [Plaintiff's] allegations of significant physical findings," and "regular notations in [Plaintiff's] treatment notes of normal psychiatric observations are inconsistent with the allegations of severely limiting mental health symptoms."  Tr. 30.  An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence.  *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601.  However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

Here, the ALJ set out the medical evidence contradicting Plaintiff's claims of disabling physical limitations, including: treating and examining providers' documentation of normal range of motion, normal strength, and normal gait; and findings that Plaintiff "routinely appeared in no distress."  Tr. 30 (citing Tr. 496, 498-99, 503-04, 506, 509, 511, 610-11).  Plaintiff does not challenge this finding in her opening brief; therefore, the Court may decline to consider this issue.  *See Carmickle*, 533 F.3d at 1161 n.2.  Regardless, the Court finds the ALJ reasonably

relied on this evidence to find that "[g]iven [Plaintiff's] allegations of severely limiting and constant symptoms, one would expect her treating providers to note some discomfort or pain behavior during a significant number of medical appointments. The absence of such observations is inconsistent with [Plaintiff's] allegations of severely limiting and constant symptoms." Tr. 30; *see Thomas*, 278 F.3d at 958-59 ("If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination . . . [t]he ALJ may consider testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which the claimant complains.").

Similarly, the ALJ outlined medical evidence inconsistent with Plaintiff's allegations of disabling mental health limitations, including "normal psychiatric observations" that Plaintiff was calm, pleasant, cooperative, well groomed, had full range of affect and mood, and normal speech, good range of affect, and good eye contact. Tr. 30 (citing, e.g., Tr. 511, 550, 565, 605, 615, 620, 625, 665, 676). In addition, the ALJ noted that Plaintiff's performance on "mental status examinations over the relevant period is inconsistent with her allegations of severely limiting mental health symptoms." Tr. 31. For instance, a mental status examination performed by examining psychologist Dr. Marks indicated Plaintiff had no delusions or hallucinations, was well organized and had progressive stream of mental activity, was fully oriented, had low average cognition, good effort in

concentration, persistence, and pace, and some problems with memory and abstract problem solving. Tr. 30 (citing Tr. 605-06). Moreover, mental status results from treating providers found Plaintiff demonstrated good or intact memory, had fair or good judgment and insight, and could spell a word backwards. Tr. 30 (citing Tr. 550, 665, 670, 672, 674, 676, 680). Based on the foregoing evidence, the ALJ reasonably concluded that the "minimal nature of the psychiatric observation documented by [Plaintiff's] treating providers and examining professionals are inconsistent with [Plaintiff's] allegations of severely limiting mental health symptoms." Tr. 31.

Plaintiff argues this reasoning was not valid because Plaintiff "was nearly always struggling with either depression or mania and she was frequently tearful during her appointments." ECF No. 14 at 14 (Tr. 510-11, 548, 552-55, 560-63, 605, 615, 625, 658-60, 665-66, 668, 672-74, 678-80, 700). However, regardless of evidence that could be interpreted more favorably to the Plaintiff, the ALJ properly relied on evidence from the overall record, as cited extensively above, to support the finding that Plaintiff's allegations of significant physical limitations and severe mental health symptoms, were inconsistent with minimal physical and psychiatric examination findings. Tr. 27. "[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The lack of corroboration of Plaintiff's claimed limitations by the medical evidence was a clear and convincing

reason, supported by substantial evidence, for the ALJ to discount Plaintiff's symptom claims.

### 4. Inconsistencies

As noted by the ALJ, "[i]n the context of a disability evaluation, an individual's statements are evaluated for their consistency, both internally and with other information in the case record." Tr. 28 (citing Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *6, *9 (October 25, 2017)); *see also Thomas*, 278 F.3d at 958-59 (in evaluating the severity of Plaintiff's symptoms, the ALJ may consider inconsistencies in Plaintiff's testimony, and between her testimony and her conduct); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (prior inconsistent statements may be considered). Here, the ALJ noted that Plaintiff inconsistently stated the reasons she is unable to work. Tr. 31. At the hearing she testified she stopped working because she was not able to maintain regular attendance, but during a mental health evaluation Plaintiff reported that she was unable to work because "she was too sad to be around others and lacked a clear understanding of what she was doing." Tr. 31 (citing Tr. 69-71, 604). Plaintiff argues these symptoms are "consistent with her bipolar disorder." ECF No. 14 at 15. However, regardless of whether Plaintiff experienced these symptoms, it was reasonable for the ALJ to rely on the inconsistency between Plaintiff's testimony, and her prior statements about why she was unable to work. *See Thomas*, 278 F.3d at 958-59.

While not identified by either party, the Court notes that the ALJ considered additional inconsistencies in the record as part of the evaluation of Plaintiff's symptom claims. Tr. 30-31. First, the ALJ noted that Plaintiff "inconsistently reported how her mental health conditions affected her abilities to perform activities of daily living. For example, at the hearing Plaintiff testified that she has difficulty getting out of bed during a typical day, that she spent the majority of the day in bed, and that she only did laundry once every three weeks." Tr. 30. However, Plaintiff previously reported that she did laundry and cleaned twice a week, and in a subsequent report indicated that she was "constantly cleaning the house and herself, which is inconsistent with the allegations of the amount of time she spends in bed." Tr. 30, 55, 61, 322, 344. Second, the ALJ found Plaintiff's allegations she would be unable to maintain attendance in the workplace are inconsistent with her ability to attend counseling appointments with minimal absences, make all court appearances, and follow through with the requirements of dependency court to regain custody of her children. Tr. 31, 54. These inconsistencies between Plaintiff's testimony and her conduct, and her prior inconsistent statements, were clear, convincing, and unchallenged reasons to discount Plaintiff's symptom claims.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

## B. Medical Opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001)(citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester,* 81 F.3d at 830–831). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray,* 554 F.3d at 1228 (quotation and citation omitted).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a).

"Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, and other non-medical sources. 20 C.F.R. § 416.913(d). The ALJ need only provide "germane reasons" for disregarding an "other source" opinion. *Molina*, 674 F.3d at 1111. However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

Plaintiff argues the ALJ erroneously considered the opinions of examining psychologist N.K. Marks, Ph.D. and treating providers Susan Wible, RN, Sarah Reeve, LMHC, and Kelli Campbell, ARNP. ECF No. 14 at 8-12.

### 1. N.K. Marks, Ph.D.

In January 2014, Dr. Marks examined Plaintiff and opined that her "mood instability prevents her from being able to work," and she "would be a very unstable and unreliable employee at this time." Tr. 608. The ALJ gave this opinion little weight. Tr. 33. Because Dr. Marks' opinion was contradicted by John Robinson, Ph.D., Tr. 94-96, and Sean Mee, Ph.D., Tr. 123-25, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Marks' opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Marks' "summary relies heavily on [Plaintiff's] subjective statements, which have been inconsistent over the relevant period and are inconsistent with the medical records." Tr. 33. An ALJ may reject a physician's opinion if it is based "to a large extent" on Plaintiff's self-reports that have been

properly discounted as not credible. *Tommasetti*, 533 F.3d at 1041. Plaintiff generally contends that the ALJ failed to explain how she reached her conclusion that Dr. Marks' opinion was based on self-report. ECF No. 14 at 8. However, as noted by the ALJ in her decision, the mental status examination conducted as part of Dr. Marks' evaluation "noted no delusions or hallucinations, and indicated [Plaintiff] presented with well organized and progressive stream of mental activity, full orientation, low average cognition, good effort in concentration, persistence and pace, and some problems with memory and abstract problem solving." Tr. 31 (citing Tr. 605-06). The ALJ further noted that Dr. Marks observed that Plaintiff was pleasant, cooperative, well groomed, and demonstrated a full range of affect and mood. Tr. 30 (citing Tr. 605).

Dr. Marks failed to discuss how these largely unremarkable results of the mental status examinations supported a finding that Plaintiff was unable to work. Moreover, the Court's review of the record indicates that Plaintiff reported to Dr. Marks during the evaluation that she was "unable to work due to mood instability," which was reiterated verbatim by Dr. Marks as part of the medical source statement. See Tr. 607-08. For all of these reasons, it was reasonable for the ALJ to conclude that Dr. Marks' opinion was based in large part on Plaintiff's properly discounted subjective complaints. *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld). This was a specific and legitimate reason to reject Dr. Marks' opinion.

Second, the ALJ noted that Dr. Mark's opinion is inconsistent with Plaintiff's activities. Tr. 33. An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning. *See Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595, 601-02 (9th Cir. 1999). In her decision, the ALJ noted evidence that Plaintiff is responsible for caring for three children, prepares meals, drives, goes grocery shopping, goes to the laundromat, vacuums daily, works on memory and scrap books for hours at a time, played football with her son, and has taken her children on daily outings. Tr. 29-30 (citing Tr. 51-55, 63, 322, 497, 555). Plaintiff contends that "the daily activities of [Plaintiff] show she did very little," and cites reports by Plaintiff in the record that she had difficulty leaving her home, was not motivated, and was irritable, depressed and anxious. ECF No. 14 at 9 (citing Tr. 510-11, 548-55, 560-66, 615). However, regardless of evidence that could be considered more favorable to Plaintiff, the ALJ reasonably concluded that these activities are inconsistent with Dr. Marks' opinion that Plaintiff is completely unable to work. *See Burch*, 400 F.3d at 679. This is a specific and legitimate reason to reject Dr. Marks' opinion.

Third, the ALJ found Dr. Marks' opinion was inconsistent with "the normal to mild psychiatric symptoms observed by treating providers, and the normal to minimal mental status examinations findings described [earlier in the ALJ's opinion]." Tr. 33. An ALJ may discredit a physician's opinion that is unsupported by the record as a whole or by objective medical findings. *Batson*, 359 F.3d at 1195;

*see also Orn*, 495 F.3d at 631 (consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion). Plaintiff argues this reason is not valid because Plaintiff's treating providers, Ms. Wible and Ms. Reeve, "observed on many occasions that [Plaintiff] was struggling with depression and anxiety and was tearful." ECF No. 14 at 9. However, as extensively cited in the ALJ's decision, the longitudinal record also included regular notations of normal psychiatric observations by treating providers, and benign mental status examination findings, which the ALJ reasonably found are inconsistent with Dr. Marks' opinion that Plaintiff was unable to work due to mood instability. Tr. 30-31 (citing Tr. 511, 550, 565, 605-06, 615, 620, 625, 665, 676, 670, 672, 674, 676, 680). This was a specific and legitimate reason, supported by substantial evidence, for the ALJ to give Dr. Marks' opinion little weight.

### 2. Susan Wible, RN

In September 2013, treating provider Ms. Wible opined that due to Plaintiff's "mental emotional disability," her ability to work was limited to 1-10 hours per week. Tr. 637. The ALJ gave her opinion little weight. Tr. 33. Ms. Wible is considered an "other source" under the regulations; thus, the ALJ must give germane reasons to reject her opinion. 20 C.F.R. § 416.913(d); *see Dodrill*, 12 F.3d at 918-19.

First, the ALJ found Ms. Wible's opinion "explicitly relies on [Plaintiff's] subjective statements, which are inconsistent with the medical records as indicated

[earlier in the ALJ's decision]." Tr. 33.  An ALJ may reject a physician's opinion if it is based "to a large extent" on Plaintiff's self-reports that have been properly discounted as not credible.  *Tommasetti*, 533 F.3d at 1041.  Plaintiff argues the ALJ fails to explain with specificity how she reached this conclusion.  ECF No. 14 at 10. However, the Court's review of Ms. Wible's opinion reveals that her diagnosis of bipolar affective disorder was not supported by testing or lab reports; and Ms. Wible relied entirely on Plaintiff's "symptoms" as "specific limitations" on her ability to work.  Tr. 637.  As discussed above, the ALJ properly discounted Plaintiff's symptom claims.  Furthermore, the ALJ's decision cites Ms. Wible's treating notes, including one dated October 2013, one month after her September 2013 opinion, finding that Plaintiff demonstrated normal speech, good range of affect, and good eye contact.  Tr. 30 (citing Tr. 550, 565, 615, 620, 625, 665).  For these reasons, it was reasonable for the ALJ to infer that Ms. Wible's opinion largely relied on Plaintiff's properly discounted symptom claims, which were inconsistent with the overall medical record.  This was a germane reason to give Ms. Wible's opinion less weight.  Moreover, even assuming the ALJ failed to properly support this reasoning, any error is harmless because, as discussed below, the ALJ's ultimate rejection of Ms. Wible's opinion was supported by substantial evidence.  *See Carmickle*, 533 F.3d at 1162-63.

The ALJ additionally found Ms. Wible's opinion is "inconsistent with [Plaintiff's] activities, the normal to mild psychiatric symptoms observed by treating

providers, and the normal to minimal mental status mental status examination findings described [earlier in the ALJ's decision]." Tr. 33.  An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning.  *See Morgan*, 169 F.3d at 601-02.  And the ALJ may discredit a physician's opinion that is unsupported by the record as a whole or by objective medical findings.  *Batson*, 359 F.3d at 1195.  These same reasons were also offered by the ALJ to discount Dr. Marks' opinion, as discussed in detail above, and Plaintiff relies on precisely the same argument she asserted with regard to Dr. Marks' opinion, namely: (1) that Plaintiff's activities are not inconsistent with Ms. Wible's opinion because they are "extremely limited" and she had difficulty leaving her home; and (2) Ms. Wible's opinion is supported by treating providers' observations that Plaintiff was "struggling with depression and anxiety, and was tearful."  ECF No. 14 at 10-11. However, as discussed extensively above, it was reasonable for the ALJ to find Plaintiff's activities, including caring for three children, were inconsistent with Ms. Wible's opinion that Plaintiff could only work 1-10 hours per week; and the ALJ properly relied on benign mental status examination results and normal psychological observations in the record as further reason to discredit Ms. Wible's opinion.  These were specific and germane reasons to reject Ms. Wible's opinion.

### 3. Sarah Reeve, LMHC

In November 2015, treating provider Ms. Reeve completed a check box "mental medical source statement."  Tr. 695-97.  She opined that Plaintiff had severe

limitations in her ability to work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and travel to unfamiliar places or use public transportation. Tr. 695-97. Ms. Reeve also assessed marked, or "marked to severe," limitations in Plaintiff's ability to carry out detailed instructions, maintain attention and concentration for extended periods, make simple work related decisions, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. Tr. 696-97. The ALJ gave Ms. Reeve's opinion no weight. Ms. Reeve is considered an "other source" under the regulations; thus, the ALJ must give germane reasons to reject her opinion. 20 C.F.R. § 416.913(d); *see Dodrill*, 12 F.3d at 918-19.

Here, the ALJ noted that Ms. Reeve "failed to provide any support or basis for her suggested limitations in spite of a paragraph that specifically asked her to explain her conclusions in narrative form." Tr. 33 (citing Tr. 697). An ALJ may permissibly reject check box reports that do not contain any explanation of the bases for their conclusions. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *see also Bray*, 554 F.3d at 1228 ("the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately

supported by clinical findings."). Plaintiff generally argues Ms. Reeve's opinion

was "supported in all of her treatment records, which were provided in the record."

ECF No. 14 at 12. The Ninth Circuit has held that when a treating physician's

check-box opinion was "based on significant experience with [Plaintiff] and

supported by numerous records, [it was] therefore entitled to weight that an

otherwise unsupported and unexplained check-box form would not merit."

*Garrison*, 759 F.3d at 1013. However, only four of the treatment notes cited by

Plaintiff in support of this argument were signed by Ms. Reeve, which does not rise

to the level of a "significant" experience with Plaintiff that "was supported by

numerous records." ECF No. 14 at 12 (citing Tr. 624, 656, 658, 660). Moreover,

the Court's review of the cited treatment notes does not provide any arguable

explanation of the bases for the marked and severe limitations assessed by Ms.

Reeve in her check-box opinion. *Crane*, 76 F.3d at 253. This was a germane reason

for the ALJ to reject Ms. Reeve's opinion.

In addition, as above, the ALJ found "the numerous marked and severe

limitations are inconsistent with [Plaintiff's] activities, the normal to mild

psychiatric symptoms observed by treating providers, and the normal to minimal

mental status examination findings described [earlier in the ALJ's decision]." Tr.

33. Plaintiff argues these reasons are not valid for the "same reasons stated above

regarding the opinion of Dr. Marks and Dr. Wible." ECF No. 14 at 11-12.

However, for the same reasons discussed in detail above, the Court finds that the

ALJ did not err in finding severity of the limitations assessed by Ms. Reeve is not consistent with her activities, and is not supported by the benign clinical and objective findings in the overall record. *See Morgan*, 169 F.3d at 601-02 (ALJ may discount an opinion that is inconsistent with a claimant's reported functioning); *Batson*, 359 F.3d at 1195 (ALJ may discredit a physician's opinion that is unsupported by the record as a whole or by objective medical findings). These were germane reasons to reject Ms. Reeve's opinion.

### 4. Kelli Campbell, ARNP

In January 2014, treating nurse practitioner Ms. Campbell opined that due to Plaintiff's "chronic" left knee pain and bipolar affective disorder, she was limited to 1-10 hours of sedentary work per week. Tr. 640-42. Ms. Campbell also specifically noted that any limitations due to Plaintiff's mental health diagnoses should be "review[ed] with her psychiatrist," and acknowledged that she did not have any recent testing or lab reports regarding Plaintiff's knee condition. Tr. 640. The ALJ gave Ms. Campbell's opinion little weight. Tr. 32. Ms. Campbell is considered an "other source" under the regulations; thus, the ALJ must give germane reasons to reject her opinion. 20 C.F.R. § 416.913(d); *see Dodrill*, 12 F.3d at 918-19.

The ALJ found Ms. Campbell's opinion "is inconsistent with the minimal physical examination findings and the observations of [Plaintiff] during medical appointments." Tr. 32. An ALJ may discredit a physician's opinion that is unsupported by the record as a whole or by objective medical findings. *Batson*, 359

F.3d at 1195.  Plaintiff argues this was not a valid reason because the ALJ failed to give "specific examples of inconsistencies."  ECF No. 14 at 12.  However, earlier in the decision the ALJ noted "minimal and mild physical examination findings found throughout the record," including: normal range of motion, normal strength, normal gait, and routine observations that Plaintiff appeared in no distress.  Tr. 30 (citing Tr. 496, 498-99, 503-04, 506, 509, 511, 610-11).  Moreover, as noted above, the ALJ cited "regular notations in [Plaintiff's] treatment notes of normal psychiatric observations," including findings that Plaintiff was calm, pleasant, cooperative, well groomed, had full range of affect and mood, and normal speech, good range of affect, and good eye contact.  Tr. 30-31 (citing Tr. 511, 550, 565, 605-06, 615, 620, 625, 665, 676, 670, 672, 674, 676, 680).  It was reasonable for the ALJ to find these minimal clinical findings and observations of Plaintiff were inconsistent with the severity of Ms. Campbell's assessment that Plaintiff was limited to 1-10 hours of sedentary work per week.  *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld).  These were germane reasons to give Ms. Campbell's opinion little weight.

## C. Step Five

Last, Plaintiff argues the ALJ "failed to account for limitations set forth" in the medical opinions discussed above; and therefore erred at step five by posing an incomplete hypothetical to the vocational expert.  ECF No. 14 at 15-16.  Plaintiff is correct that "[i]f an ALJ's hypothetical does not reflect all of the claimant's

limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Bray*, 554 F.3d at 1228 (citation and quotation marks omitted). However, as discussed in detail above, the ALJ's rejection of the medical opinions of Dr. Marks, Ms. Wible, Ms. Reeve, and Ms. Campbell, was supported by the record and free of legal error. The hypothetical proposed to the vocational expert contained the limitations reasonably identified by the ALJ and supported by substantial evidence in the record. The ALJ did not err at step five.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ properly weighed the medical opinion evidence, provided clear and convincing reasons to discount Plaintiff's symptom claims, and did not err at step five. After review the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

ACCORDINGLY, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 16**, is

   **GRANTED**.

1    The District Court Clerk is directed to enter this Order and provide copies to

2  counsel.  Judgement shall be entered for Defendant, and the file shall be **CLOSED**.

3       **DATED** November 13, 2018.

4

5                                    _s/ Rosanna Malouf Peterson_
                                ROSANNA MALOUF PETERSON
6                                United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~32